ROBT. GIBSON *v.* W. R. THOMPSON.

**Trusts—Liability of Trustees for Loss of Funds Deposited.**

     Trustees appointed by a partnership to close the partnership business and disburse the partnership funds, were held not liable for partnership funds lost on deposit in bank, no negligence on the part of the trustees being shown.

**Partnership—Trustee—Negligence—Care and Skill.**

     The evidence was held to show that a trustee appointed to close partnership affairs and make disbursement of the proceeds was not negligent and did not make improper application of the funds, and that he exercised proper skill in the execution of the trust.

APPEAL FROM LOUISVILLE CHANCERY.

December 12, 1872.

OPINION BY JUDGE PETERS:

On the 20th of May, 1865, appellant and E. D. Tyler, partners in the purchase and sale of mineral and oil lands in Kentucky, disagreeing as to the management of their business and funds, entered into the following agreement in writing:

"Whereas, a difference has arisen between Robert Gibson and E. D. Tyler, who compose the firm of Robert Gibson & Co., respecting the management of the partnership transactions and funds arising out of the contract of said Robert Gibson & Co. with Isaac K. Roberts, in which the said Robert Gibson and E. D. Tyler were the only persons interested as the firm of Robert Gibson & Co., and by which they contracted to sell certain lands to said Roberts, a part of which lands belonged to Robert Gibson alone, and a part to said Robert Gibson & Co.

"Now, in order to avoid further trouble, and danger to our mutual interests, we, Robert Gibson and E. D. Tyler, agree that all the money now on hand to the credit of Robert Gibson & Co. shall be placed in the custody and keeping of Samuel B. Smith and W. R. Thompson, who shall have power to disburse and pay out the same in discharge of the liabilities of said firm of Robert Gibson & Co., and shall pay to said Gibson such sum, or sums, out of said fund now on hand on account of the price of his individual land as they may deem proper.

"And they shall have the sole right to receive and collect the money that may hereafter become due and payable from said Roberts, and hold and control the said money when received and collected, in the same manner and with the same powers over it as are hereby given them over the money now placed in their hands.

"In the event that any dispute should arise between us as to the disposition or division of any part of the money to be received, or collected, only the amount in dispute shall be held by said Smith and Thompson for adjustment, but all besides the amount in actual dispute shall be divided between us according to our rights. The money now placed in the hands of said Smith and Thompson is all that is now to the credit of the firm of Robert Gibson & Co. on deposit with James E. Tyler & Co., and amounts to the sum of twelve thousand two hundred and thirty-five dollars and ninety-five cents; which sum is transferred to the credit of said Smith and Thompson on the books of said James E. Tyler & Co., and is to be paid on their checks for the same. The money hereafter to be received and collected shall be kept by said Smith and Thompson to their credit in some bank and banking house as they may deem proper. Signed 20th May, 1865."

On the 13th of June, 1865, appellant, by a writing of that date, constituted appellee his attorney in fact, to make, seal, sign and deliver any deeds, or any contracts, for land belonging to Robert Gibson & Co., to acknowledge the same for record, and to do all necessary and proper acts in relation thereto in order to effect sales and transfers thereof, to collect money arising from sales of said land, and to settle all matters between Sylvanus J. Macey or J. N. Roberts for the sale of land by me or by Robert Gibson & Co., and to settle all matters arising out of my partnership with E. D. Tyler, to institute suits for me and to defend suits for me, to collect all debts due me, and to pay all debts I owe, and his acts lawfully done in the premises I hereby ratify and confirm.

Thompson undertook to execute the trust created by the writing of the 20th of May, 1865, aforesaid, acted as the attorney in fact of Gibson under the writing aforesaid constituting him such attorney, and was his attorney-at-law by engagements previous and subsequent to the making of said writings.

For some time after the making of the writings herein referred to

But on the 29th of April, 1869, this suit was brought by Gibson against Thompson, charging negligence, inattention to the business

generally, the improper appropriation of large sums of money, the failure to collect money due him which might have been collected by proper diligence, and was finally lost for failing to remove the money on deposit with J. E. Tyler & Co., whereby a considerable sum was lost, for a failure to procure reconveyances of certain lands which were taken out of the contract with Roberts, and for losses sustained for want of skill as a lawyer. The several com- the parties lived on the most amicable and confidential terms, as the letters from the one to the other filed in this record show. plaints are presented in the very elaborate, original and amended petitions in a confused and indiscriminate manner.

The answers, though not as concise as they might be, deny all charges of neglect, want of skill or improper applications of funds, and controvert all the material allegations of the petitions.

Upon hearing, after full preparation, as appears, the plaintiff's petition was dismissed, and he appealed to this court.

Of the disbursements made by Smith and appellee, two made to E. D. Tyler, one of $2,500 on the 13th of July, 1865, and one of $1,500, on the 20th of September of the last-named year, are called in question.

The deposition of Tyler himself was taken and read without objection, and he proves that the amounts were due him of profits arising from the business of Robert Gibson & Co. When the first payment was made it may be that appellant was in New York, but he was in frequent correspondence with appellee, and on the 4th of August, 1865, as appears from a letter of that date from New York by appellant to appellee, Mr. Tyler was in New York; appellant talked with him about their business, as he writes to appellee in substance as follows: That they (he and Tyler) hope to get an order from the company for Mr. Speed to pay us $40,000, &c. We are trying hard to get $50,000.

Tyler and he were on terms sufficiently friendly to converse, and to earnestly co-operate in their efforts to get $50,000 from the company in New York, a payment on a sale of land for a large sum of money, and from the language of the letter, if they succeeded in getting a payment it was to be for or to both of them; and throughout the correspondence, up to the last letter found in the record, there is no suggestion that the payments to Tyler were disapproved, and long afterwards the utmost confidence is expressed through his

letters by appellant to appellee. We therefore conclude that there is no reason shown why appellee should be made responsible for the money paid to Tyler.

The next subject of complaint is that Smith and Thompson permitted $1,910.90 of the $12,235.95 transferred to them by the writing of the 20th of May, 1865, to remain on deposit with J. E. Tyler & Co. till the 26th of April, 1866. All the money on hand when the transfer was made was on deposit with said Tyler & Co., and was, as the writing stipulates, to be paid out on their (Smith and Thompson's) check for the same, which by a fair construction means that the money was to remain where it was until checked out by them in payment of demands against the company, and in forwarding its business, and this construction is forfeited, if not settled by the succeeding sentence, and last in said instrument, which provides that the money thereafter to be collected and received by Smith and Thompson was to be kept by them to their credit in some bank or banking house that they might select, evidently limiting their discretion as to the selection of the bank to the money to be collected after that date. And there is not an intimation in any of the letters addressed by appellant to appellee that the money on deposit with J. E. Tyler & Co. was unsafe, or should be removed, nor is any evidence addressed that appellant apprehended that the money was in danger, or gave any warning of that sort to appellee; but Thompson could not, as the facts appear, have incurred any legal liability for the failure of J. E. Tyler & Co. to pay the money over.

Though perhaps not in its numerical order, we will proceed to dispose of the claim of $1,000 collected from the New York company, and which he alleges appellee, in his absence in Europe, permitted Tyler to make him give credit for out of his individual account with said New York company instead of charging the same to Robert Gibson & Co. That subject seems to be alluded to in two of appellant's letters, one of the 4th of August, 1865, in which he says:

"They propose to me $1,000 on the 476 acres. I told you I had forgot formerly to put it in as part payment. When I went for it today Macy required a receipt from me that the money should come out of our final payment as a company. I was not pleased, and scrupled a good deal. Mr. Tyler said it would do just as well,

and I accepted on the principle of getting all we could, but don't like it, and scarce feel like using the money."

And in his letter of the 20th of January, 1866, after his return from Europe, he says:

"Mr. Steel, who, as appears, was the president of the New York company, told me today that the $1,000 I got here before starting was agreed to be counted to my Rudy strip of land, when you made the last contract, which is, so far, well."

Of that contract he said in another letter addressed to Thompson that he had sent him a copy and that he accepted it, as the best he could do. And it is not alleged nor shown that the money was not accounted for by him in the way that he had agreed it should be.

As to the money paid to Baker, on the 13th of July, 1865, $1,040 was paid to him on the check of Smith and appellee.

On the 22d of the same month appellant wrote from New York to appellee, and said:

"Your favor of the 19th inst. is received this morning. I am happy to say its contents are satisfactory and hopeful to me. * * * Then you have Baker's deed, so you can really complete the whole transaction, except such confirmation as may be needed by the court on behalf of the Baker tract, and the overplus 2,000 acres is security against the infants. You are to pay Baker only $4,000 more than he has got."

The transactions with Baker were in part the subject of the letter which had rendered the recipient "happy and hopeful." The $1,040 had been paid to Baker only nine days before his deed had been procured, and it would be strange if Thompson had not informed appellant in the same letter in which the transaction with Baker was detailed, of the fact of the payment of $1,040. But it seems that the terms in which he concludes the sentence quoted is conclusive of the question. If the payment had not been communicated, why would he have said: "You are to pay Baker only $4,000 more than he has got." If Baker was only to have $4,000 in all, and it had been deemed necessary to speak on the subject, he would have said, "Baker is entitled to only $4,000," or words to that effect. But this is not all.

On the 5th of November, 1865, appellee wrote to appellant, which letter appellant filed, that $4,000 had been paid to Baker, which payment was made September 20th of that year; that some money had

been paid Paris to remove squatters; $1,500 had been paid to Tyler, and $2,000 to himself and Smith; and that besides the $4,000, Tyler had paid Baker some money. This letter was received by appellant and he filed it. And although he wrote several letters to appellee after the receipt of that, he never complained that he had disregarded his instruction in the payment to Baker, nor to either of the others named. In a letter to appellee dated December 2, 1865, he says:

"I am pushing to settle all my land matters agreeable to your judgment. Baker's title will be settled by now, I presume. Perhaps you will not deed it to the company until you can get a good payment."

Still no complaint about the amount paid to Baker. These facts of themselves seem sufficient to satisfy the judicial mind that all the payments to Baker were understood and approved by appellant.

But in addition to this evidence, Tyler proves that the money paid to Baker was actually due him, and properly paid.

It is not out of place to remark that appellant was informed in the letter of appellee referred to of the payment by Smith and Thompson of $1,500 to Tyler and of $2,000 to themselves, and he never in any letters, subsequently written, complained of any or either of them.

It was important to effectuate the contract with Roberts for the sale of their lands to remove "squatters" from it. Appellant expressed his desire to have it done and recommended Paris as a suitable person to accomplish that purpose. He was accordingly engaged, and seems to have rendered efficient service. Appellant had been informed by the letter aforesaid that money had been paid to him under that employment, and he never complained; and Tyler proves that the expenditure was necessary and the amount paid not too much. On this subject in his letter dated Nov. 4, 1865, he says:

"I notice with attention what you say of the Ohio land squatters and what Judge K. says of them. I know there was difficulty needing prompt action; but good management by Paris, and sufficient money within bearable limits is able to get over it, no doubt. I can only say through you, to instruct Paris precisely according to your judgment, and I withdraw all other, or any other limits I have named."

This seems a very comprehensive if not unlimited power, and there is no evidence of an abuse of the discretion given to appellee.

The last complaint in appellant's brief is that Thompson should be made to account for that land which Robert Gibson & Co., by the contract of the 8th of November, 1865, were to take back, which had been conveyed to the New York and Kentucky Land Company, and which that company, by the terms of said contract, was to recover to Gibson and Tyler.

In a previous letter, written to appellee, appellant acknowledged the receipt of a copy of the contract of the 8th of November, 1865, made with said company, and stated that he accepted it as the best that could be done, and in a letter dated the 20th of December, 1865, to appellee, he says:

"Though that land is thrown back on Mr. Tyler's and my hands, we have it and must make something out of it. My object is to crush it into money by some mortal process. Understand me clearly. I am satisfied in that contract. You did the very best practical under the existing circumstances. My presence could have favored nothing; still I think we have a direct claim on these New York parties to take these lands on certain moderate terms, and to relieve us of holding them." And then proceeds at length to demonstrate why the parties should feel under obligations to take those lands and relieve himself and Tyler, not forgetting to refer to the fact that by said contract said parties had the full benefit of having the whole land put at the average, and, by refusing to take these rejected lands "they pocketed" the benefit of a cheap average to the disadvantage of himself and Tyler.

Appellant then had a copy of the contract, understood it and its effects thoroughly, was satisfied with it, and says in effect his presence could not have favored his interests. Under these circumstances it is difficult to perceive the principle upon which appellee could be made liable for any disaster that resulted from that contract. Injurious as it may be, a failure to consummate it might have been more so. But what real ground is there to complain of appellee if the rejected lands have not been reconveyed?

He was not bound by the accepted contract to reconvey the lands. The title was not in him. The land company was the party bound to reconvey, and if they have wrongfully appropriated any

of the land and failed to perform their covenant it would seem that there are "some mortal means to crush" the conveyance or "money" out of them for the breach. It must be evident that the remedy is against the New York and Kentucky Land Company, which is the covenantor.

There is nothing in this record to warn appellee that Tyler was the debtor, but much in it to assure him that he was the joint owner, having equal claim to the partnership effects with appellant. From the letters of appellant it is manifest that he and Tyler were on social terms in New York after the agreement of the 20th of May, 1865, was entered into. The difficulty between the parties as to the management of their affairs had arisen out of the contract with Roberts, and that difficulty caused the agreement of the 20th of May, 1865, to be entered into. As the writing recites, it provides for a division of the money to be collected after its date, and contains no intimation that one partner had received more of the partnership funds than the other up to that time. Appellant did not leave for Europe until about the 5th of August, 1865, and returned in January, 1866. He does not in any of his letters to appellee suggest that he should see Tyler, but advises him to call on Tyler for aid in certain matters, and he and Tyler had conferences together in New York; and afterwards, when he did bring suit against Tyler, he retained Thompson as his lawyer. If there was any negligence then in failing to sue Tyler at an earlier period, appellant was the party in fault.

Thompson's claim for services seems to be sustained by the evidence, and, perceiving no error prejudicial to appellant, the judgment must be *affirmed*.

*Craddock & Trabue*, for appellant.

*Thompson & Booth*, for appellee.